IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Amic,                                    :
                              Petitioner         :
                                                 :
              v.                                 :
                                                 :
Workers' Compensation Appeal                     :
Board (Industrial Construction Co.),   :   No. 1431 C.D. 2015
                              Respondent  :   Submitted:  January 22, 2016


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: February 8, 2016


              Robert Amic (Claimant) petitions for review of an order of the
Workers' Compensation Appeal Board (Board) affirming the Workers'
Compensation Judge's (WCJ) denial of his petition to review compensation
benefits (review petition) in which he sought to amend the description of his work-
related injury to include complex regional pain syndrome (CRPS).  In this appeal,
Claimant does not contend that he satisfied his burden of proving that he suffered
CRPS.  Rather, he claims that the uncontroverted medical evidence presented by
Industrial Construction Company (Employer) established that he suffered other
injuries to which the description of his injury should have been expanded.  For the
reasons that follow, we affirm.

## I.

## A.

By way of background, on June 17, 2010, while working as an ironworker for Employer, Claimant sustained a work-related injury in the form of a right thumb fracture, which Employer accepted. In March 2012, Claimant filed a review petition seeking to expand the definition of his work-related injury to include CRPS.[1]

Before the WCJ, Claimant testified that as an ironworker, he erected superstructures for buildings using steel and also sheeted, tied rebar, welded, burned, fabricated and connected steel. On the date of his injury, he was working on a 35-foot high man-lift, "connecting a beam to an existing beam, and the beam that was connected to the crane came down and crushed [his] thumb." (Certified Record [C.R.], 3/13/12 Hearing, at 12.) Another worker signaled to the crane operator, who then lifted the beam off of Claimant's right thumb. He was taken to Butler Hospital's Emergency Room, where he was advised that his thumb was crushed, provided pain medication, and instructed to follow up with an orthopedic specialist.

Shortly thereafter, Claimant testified that he underwent thumb surgery with the installation of hardware performed by Dr. Spiess and then received physical therapy until January 2012, with massage, heat treatment, strengthening

---

[1] Employer simultaneously filed a petition to modify benefits, which the WCJ denied. Because that determination has not been appealed, we will not set forth at length the testimony pertaining to that issue.

exercises, electrostimulation and ultrasound stimulation. In August 2010, Dr. Spiess performed a second thumb surgery to remove the hardware, after which Claimant returned to physical therapy.

Because he continued to experience constant pain in his right thumb that extended into his arm and caused shaking, and because he still had no movement in his thumb, Claimant testified that he underwent a third surgery in February 2011, this time performed by Glenn A. Buterbaugh, M.D. (Dr. Buterbaugh), an orthopedic surgeon specializing in surgery of the upper extremity, shoulder, elbow, hand and wrist. He testified that in August of 2011, Dr. Buterbaugh performed an IP joint fusion for purposes of pain relief. Although the fusion provided temporary pain relief, Claimant testified that he continued to experience "pain stemming up from [his] thumb, up into [his] arm, neck, and shoulder," with a "tingling feeling throughout [his] arm, shooting pains." (*Id.* at 21.) Eventually, he testified that Dr. Buterbaugh referred Claimant to David A. Provenzano, M.D. (Dr. Provenzano), a pain management specialist, and scheduled him for a functional capacity evaluation (FCE) with Mr. Irwin, a licensed occupational therapist and certified hand therapist.

He testified that Dr. Provenzano performed a stellate ganglion block and prescribed Neurontin, a nerve medication, and Vicodin, as needed for the pain. Dr. Provenzano also prescribed a TENS Unit, an H-Wave unit, a paraffin wax unit to prevent the cold from affecting Claimant's hand,[2] and continued therapy.

---

[2] Claimant explained that as his hand gets colder, it turns purple, including "[m]ost of the thumb and the top two fingers, [his] pointer and index finger, across the back of [his] hand and
**(Footnote continued on next page…)**

3

Claimant testified that he is still able to use his thumb for extremely light-duty tasks, such as picking up pens, pencils and smaller items. He uses it to write and button buttons but cannot lift anything heavier than one pound.

At a later hearing before the WCJ, Claimant testified that he continues to treat with Dr. Buterbaugh and Dr. Provenzano, along with his primary care physician and takes Lyrica, Cymbalta and Baclophen. He stated that Dr. Provenzano also treats the hyper-sensitivity in Claimant's upper-right extremity between his index finger and right thumb, in the web space. With regard to overall progress, he reported that despite receiving three years' worth of treatment, he continues to suffer the pain previously described.

**B.**

Claimant also submitted Dr. Buterbaugh's deposition in which he stated that he began treating Claimant for the injuries to his thumb on January 5, 2011. Although he referred Claimant to Dr. Provenzano for pain management and treatment of Claimant's CRPS, and although Dr. Buterbaugh did not personally diagnose Claimant with CRPS, he stated that this diagnosis was consistent with the symptoms Claimant exhibited upon physical examination.

---

**(continued…)**

into the palm." (C.R., 3/13/12 Hearing, at 32.) When this occurs, Claimant experiences numbness and achiness, with his hand physically locking to the point that he cannot move it until he warms it up with the paraffin unit.

4

Claimant also presented the deposition testimony of Dr. Provenzano, a board-certified anesthesiologist and pain medicine provider. Dr. Provenzano testified that he initially diagnosed Claimant as suffering from a right upper extremity neuropathic pain with a sympathetic component. At the time of his first diagnosis, Dr. Provenzano testified that he did not believe that Claimant satisfied the physical examination criteria for a CRPS diagnosis because he did not exhibit differences in hair or nail growth, increased sweating or temperatures, or significant swelling.

During his monthly appointments with Claimant, Dr. Provenzano managed his neuropathic pain with medications and performed five stellate ganglion blocks, whereby the sympathetic nervous system to the arm was blocked and successfully reduced Claimant's pain. Dr. Provenzano testified that this success indicates that Claimant suffered an abnormality in his sympathetic nervous system because he responded to blocking. Moreover, during his October 8, 2012 appointment, Claimant exhibited signs and symptoms consistent with CRPS in that his hand was darker in color, his sweating increased, and he reported faster nail growth. Again, during Claimant's July 22, 2013 follow up, Dr. Provenzano testified that Claimant's thumb was redder and that he exhibited significantly more sweating.

Regarding Claimant's diagnosis, Dr. Provenzano testified within a reasonable degree of medical certainty that Claimant suffered CRPS. Dr.

5

Provenzano explained that Claimant satisfied the Budapest criteria[3] and, therefore, was appropriately diagnosed with CRPS because he suffers continuing disproportionate pain, has reported symptoms regarding his senses, temperature, asymmetry of skin color, nail growth changes, decreased range of motion, and Dr. Provenzano observed his sensory changes, his increased response to painful stimuli, and his increased response to non-painful stimuli. He explained that no single test exists for conclusively determining whether an individual suffers CRPS; rather, the diagnosis is governed by a neuropathic component.

On cross-examination, Dr. Provenzano conceded that on occasion, Claimant presented with sufficient signs to qualify as having CRPS, while on other occasions, he did not. He admitted that his first examination of Claimant occurred more than a year after his work injury, and that he did not diagnosis Claimant with CRPS until January 2012, about one-and-one-half years after his injury. In reviewing an office note, Dr. Provenzano was unable to explain why the increased sweating, a symptom qualifying Claimant for the CRPS diagnosis, presented in both hands but did state that CRPS can progress to the other arm, although he denied that Claimant suffers from CRPS in his left hand.

---

[3] Dr. Provenzano explained that pursuant to the "Budapest test," a patient must satisfy the following criteria to receive a clinical diagnosis of CRPS: the patient experiences continuing pain that is disproportioned to an exciting event; the patient reports at least one symptom in three of the following categories: sensory, vasomotor, sudomotor or edema, motor, and atrophic changes; the patient exhibits at least one time during evaluation symptoms in two or more of the categories above; and a diagnosis which better explains the symptoms does not exist.

## C.

In opposition to Claimant's review petition, Employer presented the testimony of Steven E. Kann, M.D. (Dr. Kann), a board-certified orthopedic surgeon with further certification in the subspecialty of hand, upper extremity and microsurgery, who performed an Independent Medical Examination (IME) on Claimant after examining him in January and June 2012. Upon physical examination, Dr. Kann observed no clinical evidence of CRPS and opined that Claimant did not suffer CRPS in his right upper extremity:

> [b]ecause there was no either subjective complaints consistent with it or objective test findings either on physical exam or plain x-rays. In other words, there was no evidence of vasomotor abnormalities. He had no abnormalities in color, temperature, hair characteristics, nail characteristics, sweat pattern or allodynia or hyperpathia.
>
> On exam, he had no findings of chronic RSD [or CRPS] which would include abnormal hair growth, abnormal nail growth, skin that is very thin and shiny. He didn't have any of those findings. And on x-ray, people that have chronic RSD or CRPS will have diffuse osteopenia which means that the bones are very thin and not very calcified, and that was not the case.

(10/17/12 Deposition Transcript of Steven E. Kann, M.D., at 11−12.)

Dr. Kann examined Claimant again on June 19, 2012, when he performed another physical evaluation showing no evidence of vasomotor abnormalities or CRPS. Additional x-rays ordered at that time revealed no evidence of diffuse osteopenia, which, when present, is indicative of CRPS, and

7

showed that the fusion ultimately succeeded. Dr. Kann concluded that Claimant exhibited no evidence of CRPS and, in fact, did not have CRPS.

## II.

Based upon the evidence presented, the WCJ denied Claimant's review petition, determining that Claimant failed to satisfy his burden of establishing that the description of his work-related injury should be expanded to include CRPS. Specifically, the WCJ determined:

> With respect to the question of whether [C]laimant has complex regional pain syndrome, I accept the opinions of Dr. Kann as credible over those of Dr. Buterbaugh and Dr. Provenzano. I note that Dr. Buterbaugh did not really treat [C]laimant for this condition or examine him to any great extent for this condition. I found Dr. Provenzano's testimony to [*sic*] very unconvincing in that he did not seem to be able to point to any specific place in his records where he had found sufficient signs consistent with CRPS such that he can make that diagnosis with any certainty.

(6/26/14 WCJ Opinion, at 9.)

Claimant appealed to the Board, which affirmed the WCJ's decision, determining that Claimant did not satisfy his burden of proving a causal relationship between his work injury and alleged CRPS by unequivocal medical evidence because the WCJ rejected his experts' testimonies that he suffers from CRPS. Further, the Board rejected Claimant's argument that the WCJ failed to take proper notice of the diagnostic criteria for CRPS, noting that a judge is not qualified to render expert medical opinions but rather, must make findings based

8

upon competent medical opinions, which, in this case, the WCJ deemed to be the opinion of Dr. Kann. Finally, the Board disagreed with Claimant's contention that the WCJ erred by failing to expand the definition of the work injury to include radial sensory nerve neuropathy of the right thumb, a diagnosis rendered by Dr. Kann, reasoning that under *Continental Insurance Group v. Workers' Compensation Board (Gerbino)*, the Workers' Compensation Act (Act)[4] does not impose upon a WCJ the burden of looking beyond the relief requested in the pleadings. 638 A.2d 419 (Pa. Cmwlth. 1994). This appeal followed.

## III.

On appeal,[5] Claimant does not contend that the WCJ erred in finding that the description of his injury should not be amended to include CRPS. Instead, he contends that the uncontroverted evidence offered by Dr. Kann and adopted by the WCJ establishes that Claimant suffered multiple injuries that were not included in the definition of his work injury and that the WCJ erred by failing to address any diagnosis other than CRPS. Specifically, Claimant argues that the WCJ rejected the following diagnoses rendered by Dr. Kann without proceeding to determine whether they should be included in the description of injury:

- Residual pain involving the radial sensory nerve of the right thumb;

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1—1041.4, 2501—2708.

[5] We review Board decisions to determine whether errors of law were made, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n.4 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 1229 (Pa. 2009).

9

- Residual scar sensitivity on the volar aspect of the right thumb;

- Sensory nerve neuropathy of the right thumb (meaning Claimant had irritation and pain involving the dorsal aspect of his thumb because of the injury to the radial sensory nerve);

- Scar sensitivity on the volar aspect of the thumb in the A-1 pulley region; and

- Slowing of the nerve function of the right thumb.

Section 413 of the Act provides in pertinent part:

> [a] workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, *upon petition filed by either party* with the department….

77 P.S. §772 (emphasis added). In this case, Claimant petitioned to expand the description of his work injury to include CRPS; he did not petition, either in writing or orally, to include the other diagnoses set forth above. Further, although a WCJ is free, *sua sponte*, "to take appropriate action as indicated by the evidence upon the filing of any petition referenced therein by either party," Section 413 of the Act "does not impose upon the [WCJ] the burden of looking beyond the relief requested in the pleadings" because he "is required only to consider matters properly raised" by a party. *Continental Insurance Group*, 638 A.2d at 421.

Nonetheless, Claimant argues that *Continental Insurance Group* is inapposite to the instant case. In that case, an employer filed a petition to terminate a claimant's benefits on the basis that the claimant fully recovered. During the proceedings before the WCJ, the employer submitted evidence which ostensibly would have supported a petition to modify the claimant's benefits, a petition the employer did not file. Subsequently, the WCJ determined that the employer did not satisfy its burden of proof with regard to the termination petition. The employer appealed, contending that the WCJ erred in failing, *sua sponte*, to grant a modification of the claimant's benefits based upon the evidence of record. Ultimately, this Court affirmed the WCJ's decision, finding that although a WCJ is authorized under Section 413 of the Act, 77 P.S. §772, to grant relief other than that specifically requested, the WCJ was under no obligation to do so.

Claimant asserts that *Continental Insurance Group* is distinguishable because, in that case, the employer filed a termination petition and sought the WCJ to order *sua sponte* relief in the form of a modification, whereas here, Claimant seeks relief with regard to the same type of petition as he filed—that is, a review petition—based upon evidence already presented. However, the fact that the evidence on which Claimant relies is already part of the record is of no import. In *Continental Insurance Group*, we explicitly described the issue before us as "whether the referee erred in failing to grant a modification of Claimant's benefits *where evidence allegedly existed in the record to support such relief*, *but* where the only petition filed by Employer was one for termination." 638 A.2d at 421 (emphasis added).

11

Moreover, *Continental Insurance Group*'s rationale that a WCJ cannot be compelled to look beyond the specific relief requested by a party or to consider matters other than those properly raised by a party applies with equal force here. Carried to its logical end, the position Claimant advances would allow a claimant to file any type of petition seeking resolution of only one issue and would require the WCJ to identify each and every other issue conceivably raised by the evidence before him. Such a process essentially reassigns counsel's duties to the WCJ and does not promote the fair and efficient administration of justice, as it does not ensure that the opposing party "has notice of the relief sought" and "a full and fair opportunity" to litigate the issues presented. *Id.* (explaining that even with regard to *sua sponte* relief, a WCJ may grant relief beyond that specifically requested only where these requirements are satisfied).

Accordingly, we affirm the Board's order upholding the WCJ's denial of Claimant's review petition.

DAN PELLEGRINI, Senior Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Amic,                                    :
                          Petitioner    :
                                                :
            v.                                  :
                                                :
Workers' Compensation Appeal          :
Board (Industrial Construction Co.),   :
                          Respondent :   No. 1431 C.D. 2015


**O R D E R**


AND NOW, this 8<u>th</u> day of <u>February</u>, 2016, the order of the Workers'
Compensation Appeal Board dated July 10, 2015, in the above-captioned case is
affirmed.


 

_____
DAN PELLEGRINI, Senior Judge